

Ira S. Nesenoff
Andrew T. Miltenberg
Stuart Bernstein

Barbara H. Trapasso
Tara J. Davis
Diana R. Warshow
Gabrielle M. Vinci
Kara L. Gorycki
Cindy A. Singh
Nicholas E. Lewis
Adrienne D. Levy
Ryaan Nizam
Regina M. Federico

Philip A. Byler
*Senior Litigation Counsel*
Rebecca C. Nunberg
*Counsel*
Jeffrey S. Berkowitz
*Counsel*
Marybeth Sydor
*Title IX Consultant*

November 18, 2019

**VIA ECF**
The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
Long Island Courthouse
100 Federal Plaza, Courtroom 920
Central Islip, New York 11722

  Re: Hice v. Lemon, No. 2:19-CV-04666 (JMA) (GRB)
     <u>Supplemental Letter Support of Motion to Remand</u>

Dear Judge Azrack:

  We represent the Plaintiff, Dustin Hice, in the above-referenced matter, and respectfully submit this supplemental letter in further support of Plaintiff's motion to remand this matter to state court, to apprise the Court of recent congressional action relating directly to the issue at hand.

**<u>Congressional Hearing on Snap Removals</u>**

  On Thursday, November 14, 2019, the United States House of Representatives Judiciary Committee, Subcommittee on Courts, Intellectual Property, and the Internet, held a hearing on the rising use of "snap removal"[1] to circumvent the forum defendant rule. Throughout the proceedings, it became clear that the prevailing view – including among congress – is that snap removal is an impermissible act of gamesmanship which violates both the spirit and intent of the removal statutes. The primary purpose of the hearing was to determine the best method for amending the statute to clarify that such removals—which is precisely what Defendant Lemon has done here—are not permissible.

---

[1] Snap removal is when a defendant removes a state court action to federal court *before* being served with process.

Page **1** of **4**

NEW YORK | 363 Seventh Avenue | Fifth Floor | New York, NY 10001 | T: 212.736.4500 | F: 212.736.2260 |
BOSTON | 101 Federal Street | 19th Floor | Boston, MA 02110 | T: 617.209.2188 |

Case 2:19-cv-04666-JMA-GRB   Document 13   Filed 11/18/19   Page 2 of 4 PageID #: 53



Attached hereto as Exhibits A-E are copies of: (i) Chairman Jerrold Nadler's Statement for the Subcommittee Hearing; (ii) Statement of Arthur D. Hellman, Professor of Law Emeritus, University of Pittsburgh School of Law; (iii) Statement of James E. Pfander, Owen L. Coon Professor of Law, Northwestern University Pritzger School of Law; (iv) Statement of Ellen Relkin, Esq., Weitz & Luxemberg Defectove Drugs and Devices Practice Group Co-Chair; and (v) Statement of Kaspar Stoffelmayr, Esq., Partner, Barlit Beck, LLP.

While the attachments speak for themselves, it is worth noting that the clear purpose of the committee hearing was to "fix" the problem of snap removals, making it abundantly clear that the Second Circuit's holding in *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) is fundamentally flawed, wrongly decided, and will almost certainly be superseded by statute/amendment.

As Chairman Nadler, himself, put it:

> Under well-established law, known as diversity jurisdiction, when a plaintiff sues a defendant who is a resident of another state in state court, that defendant may remove the case to federal court. This provision is intended to protect against possible bias that may occur against an out-of-state defendant. **When the defendant is sued in his or her own state, however, removal is not permitted because the concern for bias no longer exists. This is referred to as the forum defendant rule.**
>
> Unfortunately, a combination of modern technology, a desire by some corporations to avoid state courts seemingly at any cost, and a supposed loophole in the removal statute has engendered a new tactic.
>
> . . .
>
> Many companies, therefore, now use computer programs to monitor court filings in real time and to remove any case against them in their own state by an out-of-state plaintiff before the plaintiff has time to effect service—sometimes in a matter of mere minutes—in an attempt to thwart the forum defendant rule.
>
> Although <u>**this sort of gamesmanship is clearly contrary to the spirit and the intent of the federal removal statute,**</u> some courts have ruled that such snap removals are permitted by a plain reading of the text. <u>**It is important, therefore, that Congress clarify the statute to put an end to this dubious maneuver.**</u>
>
> . . .

Page 2 of 4

Case 2:19-cv-04666-JMA-GRB   Document 13   Filed 11/18/19   Page 3 of 4 PageID #: 54



I look forward to the witnesses' testimony, and particularly their thoughts on **how Congress can fix this important and growing problem**. I yield back the balance of my time.

*Examining the Use of 'Snap' Removals to Circumvent the Forum Defendant Rule: Hearing Before the Subcomm. on Courts, Intellectual Property, and the Internet, H. Comm. On the Judiciary*, 116th Cong. (Nov. 14, 2019) (statement of Rep. Nadler, Chair, H. Comm. On the Judiciary) (emphasis added).

Of the four additional Statements made to the Committee, only one witness supported snap removals: Mr. Stoffelmayr, who wrote on behalf of a "national coalition of . . . corporations and defense trial lawyer organizations." Mr. Stoffelmayr's primary argument was that snap removals only affect a small number of Plaintiffs, and thus, even though permitting snap removals can *admittedly* lead to anomalous results, it is essentially not a problem so significant that it needs fixing. Mr. Stoffelmayr further opined that Plaintiffs' loss of their chosen forum by virtue of snap removal is not substantively prejudicial because federal courts are adequately able to address state law claims. The Statement contains little else in the way of policy argument.

Indeed, as one of the other witnesses noted:

> No one defends the practice of snap removal as the product of a considered policy judgment by Congress, and for good reason. It's difficult to see why Congress would leave the forum defendant rule generally intact as a bar to removal, and create a special exception for only those forum defendants who have the resources and incentives as repeat players to hire docket monitoring services and act quickly in the wake of new litigation. Rather, as with so many other aspects of modern life, technological change has created new disruptive possibilities. Snap removal seems novel in the sense that it exploits old language by deploying modern technology.
>
> . . .
>
> [W]e might ask whether a sensible system of jurisdictional allocation would foreclose removal by forum defendants and then create an exception for nimble docket-monitoring forum defendants. The question seems to answer itself. . . . If Congress wishes to preserve those limits on federal jurisdiction, it makes little sense to allow them to be circumvented by snap removal. Indeed, **one striking feature of snap removal is that it has almost no policy justification**; the doctrine has arisen entirely in reliance on a literal interpretation of federal law.

Page **3** of **4**



> . . .
>
> Without any policy justification, one finds snap removal quite difficult to defend. It takes cases that current law assigns to the state courts and allows them to be removed but only until the time the forum defendant has been served with process. That possibility will create incentives for defendants to engage in wasteful docket monitoring and for plaintiffs to take steps in advance of the litigation to counter anticipated snap removal practices. Given the uncertainty in current law as to the legality of the tactic, moreover, **snap removal tends to foster jurisdictional litigation that complicates and delays the resolution of the merits of the dispute.** Resources devoted to the snap removal game do little to advance the goal of the achieving the "just, speedy, and inexpensive determination" of every action and proceeding.
>
> . . .
>
> This subcommittee deserves credit for addressing the dysfunctional features of federal jurisdiction, including the current **poster child of dysfunction, snap removal.**

*Examining the Use of 'Snap' Removals to Circumvent the Forum Defendant Rule: Hearing Before the Subcomm. on Courts, Intellectual Property, and the Internet, H. Comm. On the Judiciary*, 116th Cong. (Nov. 14, 2019) (statement of James E. Pfander, Esq.) (emphasis added).

### Conclusion

In light of the above, and the exhibits attached hereto, and the prior submissions made in support of Plaintiff's motion, Plaintiff respectfully submits this Court should remand this case to the Supreme Court for the State of New York.

Respectfully Submitted,

NESENOFF & MILTENBERG, LLP

By: _/s/ Andrew Miltenberg_
Andrew Miltenberg, Esq.
Stuart Bernstein, Esq.
Adrienne Levy, Esq.

cc: All Counsel (Via ECF)