UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____ x
                                          :
DUSTIN HICE,                              :
                                          :   Docket No.: 19-CV-4666-JMA-JMW
              Plaintiff                   :
                                          :
      -v-                                 :
                                          :
DON LEMON,                                :
                                          :
              Defendant.                  :
_____ x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR
TERMINATING SANCTIONS AND OTHER RELIEF DUE TO
PLAINTIFF'S SPOLIATION OF EVIDENCE AND OTHER MISCONDUCT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 3

    I.     Plaintiff Withheld Relevant Discovery and Impeded Testimony ................................... 3

    II.    Third Party Disclosures of Information Withheld by Plaintiff ....................................... 4

       a.   Isabel Peters a/k/a "Jane Roe" ................................................................................. 4

       b.   Plaintiff's First Deposition ...................................................................................... 7

       c.   Gounelas' Production in Response to Subpoena .................................................... 7

    III.   The Court Orders Plaintiff to Comply with Discovery .................................................. 8

    IV.   Gounelas Recants and Admits Plaintiff Offered him Bribes .......................................... 8

    V.    Plaintiff Fails to Cure the Deficiency ........................................................................... 9

    VI.   Plaintiff Admits Deleting Evidence and Continues his Concealment .......................... 10

LEGAL STANDARD ......................................................................................................... 14

ARGUMENT ...................................................................................................................... 15

    I.     Plaintiff Willfully Spoliated Critical Evidence in Bad Faith ....................................... 15

       a.   The Duty to Preserve Evidence Attached in September 2018 ..................................... 15

       b.   The Evidence Was Critical ...................................................................................... 17

       c.   Critical Evidence was Destroyed in Bad Faith ...................................................... 18

       d.   Scope and Content of Other Deleted Materials ...................................................... 20

    II.    Lesser Sanctions Cannot Restore the Status Quo ........................................................ 22

       a.   Adverse Inference(s), Fines, and Preclusion Cannot Level the Playing Field.............. 22

       b.   Terminating Sanctions can Restore Order .............................................................. 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Best Payphones, Inc. v. City of N.Y.*,
No. 1-CV-3942(JG)(VMS), 2016 WL 792396 (E.D.N.Y. 2016) ...........................................14

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001) .....................................................................................................18

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
138 F. Supp. 3d 352 (S.D.N.Y. 2015) .....................................................................................24

*Coral Grp., Inc. v. Shell Oil Co.*,
286 F.R.D. 426 (W.D. Mo. 2012) ...........................................................................................25

*Holmes v. U.S. Bank*,
2009 WL 1542786 (S.D. Ohio May 28, 2009) .....................................................22, 23, 24, 25

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) ....................................................................................................15

*Quiroz v. Sup. Building* Maintence,
2008 WL 3540599 (S.D. Fl. August 12, 2008) ........................................................................24

*Ramsey v. Broy*,
2010 WL 1251199 (S.D. Ill. Mar. 24, 2010) .....................................................................23, 25

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
306 F.3d 99 (2d Cir. 2002) ......................................................................................................20

*Sassower v. Field*,
973 F.2d 75 (2d Cir. 1992) ......................................................................................................14

*West v. Goodyear Tire & Rubber Co.*,
167 F.3d 776 (2d Cir. 1999) ....................................................................................................22

*Williams v. Geraci*,
2020 WL 5848738 (E.D.N.Y. Sept. 30, 2020) ........................................................................17

*Williams v. New York City Transit Auth.*,
2011 WL 5024280 (E.D.N.Y. Oct. 19, 2011) ..........................................................................16

*Young v. Off. of U.S. Senate Sergeant at Arms*,
217 F.R.D. 61 (D.D.C. 2003) .............................................................................................23, 24

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) ......................................................................................15, 16

**Statutes and Rules**

Fed. R. Civ. P. 37(e) ......................................................................................................14, 15, 18

Defendant Don Lemon submits this Memorandum of Law in Support of his Motion for Terminating Sanctions and Other Relief pursuant to Fed. R. Civ. P. 37(e), and under the Court's inherent authority.  Mr. Lemon respectfully asks the Court to dismiss Plaintiff Dustin Hice's Complaint, or in the alternative, impose other appropriate sanctions based on Plaintiff's bad-faith spoliation of evidence, witness tampering, perjury, and other misconduct.

## PRELIMINARY STATEMENT

Terminating sanctions are warranted in this matter based upon Plaintiff's egregious misconduct.  Specifically, Plaintiff's misconduct includes 1) the selective destruction of texts, social-media posts and photographic evidence, and the concealment of unfavorable witnesses, each of which directly undermine Plaintiff's factual allegations and claims of "emotional distress," and 2) Plaintiff's repeated promises to financially compensate his only named witness in exchange for favorable, perjured testimony.

Any remedy short of terminating sanctions would be unduly prejudicial to Mr. Lemon, who would otherwise be forced to litigate in a fictitious landscape that Plaintiff created through his selective destruction of unfavorable evidence and his attempts to solicit perjured testimony. Moreover, as a practical matter, a lesser sanction, such as an adverse inference instruction, would require a jury to make adverse findings against Plaintiff himself and the only witness that Plaintiff intends to offer in this matter, essentially resulting in a directed verdict.  Such an exercise would waste judicial resources, would result in unnecessary costs for Mr. Lemon, and would fail to deter future litigants from engaging in similar outrageous misconduct.

## BACKGROUND

This case arises out of an offensive gesture that Mr. Lemon allegedly made at a bar in response to Plaintiff's repeated, unwelcome taunts and solicitations.

Plaintiff, a Florida resident, was seasonally employed at a restaurant in the Hamptons during the summer of 2018.  Mr. Lemon also maintains a residence in the Hamptons.  At the time of the alleged incident, Plaintiff and Mr. Lemon were not personally acquainted.

In July of 2018, Plaintiff went to a bar with two of his friends.  Plaintiff saw Mr. Lemon at the bar with his own group of friends.  Plaintiff knew who Mr. Lemon was because of his work as a television news anchor.  Plaintiff repeatedly yelled across the bar at Mr. Lemon, offering to buy him "lemon drop" shots.  Mr. Lemon repeatedly declined, stating that he just wanted to be with his own friends.  Plaintiff next alleges that Mr. Lemon, after repeatedly rejecting Plaintiff's overtures, and while walking toward Plaintiff, put his hand down the front of his own shorts, rubbed his genitals, and shoved his fingers into Plaintiff's moustache under his nose.  Plaintiff does not allege that he suffered physical injury as a result of this alleged encounter.  His claimed damages are for alleged "emotional distress."

Plaintiff identified only one witness in support of his account of the alleged incident: his friend, George Gounelas, who was at the bar with Plaintiff that evening.  Neither Plaintiff nor Gounelas, however, is capable of offering competent evidence in support of the alleged incident.  As discussed in detail below, Plaintiff has admitted that in anticipation of filing this action, he selectively destroyed countless text messages, social media posts and messages, and incriminating photographs, believing that this evidence would be damaging to him in the litigation.  Additionally, after being confronted with text message evidence subpoenaed from Gounelas, Plaintiff acknowledged that he offered Gounelas financial compensation for Gounelas' favorable testimony.  Similarly, after being confronted with his own text records, Gounelas corroborated the fact that Plaintiff offered him financial compensation for his testimony, and further recanted his prior testimony, stating that he may not have seen *any* interaction, however brief, between Plaintiff and Mr. Lemon.

Plaintiff's misconduct constitutes bad faith spoliation and witness tampering, which the Court has discretion to address through specific remedies, including terminating sanctions in the most egregious circumstances such as those presented here. Plaintiff's pattern of misconduct and contempt for the judicial process unduly prejudices Mr. Lemon's defense of this case. Dismissal of the Complaint is warranted under these extreme circumstances. In the event that the Court declines to terminate the action, the Defense respectfully requests that the Court impose sanctions including: (i) striking portions of the Complaint; (ii) precluding certain evidence at trial; (iii) granting an adverse inference instruction; (iv) precluding or limiting Plaintiff's recovery of damages based on emotional distress; and (v) awarding attorneys' fees and costs.

## STATEMENT OF FACTS

### I.  Plaintiff Withheld Relevant Discovery and Impeded Testimony

The chronology of discovery in this litigation reveals much about Plaintiff's efforts to conceal unfavorable evidence. On June 19, 2020, the parties exchanged initial Rule 26 disclosures. Notably absent from Plaintiff's disclosure was any information about a "Jane Roe," whom Plaintiff had identified in his Complaint as having accompanied Plaintiff and Gounelas to the bar in July of 2018. When the Defense inquired about her information,[1] Plaintiff refused to provide her identity. *Ex. B*, *June 23, 2020, Email from Adrienne Levy and Pl.'s Rule 26 Disc.* at 1.

A month later, on July 20, 2020, the parties exchanged initial discovery requests. The Defense requested: a) all "documents" (which included, by definition, "any communication") "sent to, received from, or otherwise relating to any person you intend to call as a witness at trial" including "Jane Roe;" b) "[a]ll Social Media Account postings relating" to the allegations and claim

---

[1]  Plaintiff later testified he has known Jane Roe's contact information for years. *See Ex. A*, *Tr. of Pl.'s Aug. 6, 2021 Dep.* at 44:9-10. Citations in the format "*Ex. ___*" refer to exhibits in the Declaration of Caroline J. Polisi dated September 10, 2021. *See Polisi Decl.* at 1–4.

for damages; c) "all statements you have made . . . on social media regarding Defendant and/or CNN"; and d) "[a]ll photos and videos You, or another Person has taken and/or recorded relating to the allegations in the Complaint." *Ex. C*, *Pl.'s Resp. to Def.'s Interrog. and Req. for Prod. of Docs.* at 10, 13–14, and 29.

On September 2, 2020, Plaintiff produced 32 pages of discovery, including 2 pages of income information, 26 pages concerning his first efforts to seek mental-health counseling in 2020, and 4 pages of text messages with an individual named Nick Carleton from August of 2019. *Ex. C* at PLTF-00001–32. Plaintiff objected to providing any additional documents, claiming that his social media posts were in the "public domain." *Jan. 6, 2021 Hrg. Tr.*, *ECF No. 56* at 11:13–17. While Plaintiff produced a handful of text messages that referenced Gounelas, he did not produce a single actual communication between himself and Gounelas – his proclaimed "star witness." He did not even admit the existence of such communications. In his discovery responses, Plaintiff finally identified "Jane Roe," but withheld her contact information. *Ex. C at 25*.

Gounelas sat for his first deposition on November 20, 2020. *Ex. D*, *Tr. of George Gounelas' Nov. 20, 2020 Dep.* at 40:17–42:17. Gounelas likewise minimized the extent of his communications with Plaintiff, testifying that they "text here and there, how are you doing, how's your grandfather," but claimed that they did not text about media coverage of this case, and they would only communicate "once in a while." *Ex. D* at 52:12–17, 63:5–24, and 64:12–15. As discussed further herein, only at a subsequent deposition did Gounelas admit that those statements were false, after he was confronted with the text messages that he was compelled to produce in response to a Defense subpoena.

## II.     Third Party Disclosures of Information Withheld by Plaintiff

### a.   Isabel Peters a/k/a "Jane Roe"

On December 16, 2020, Plaintiff simultaneously noticed depositions for two individuals: Isabel Peters, identified in the Complaint as "Jane Roe," and her father. Prior to her deposition, Ms. Peters produced screenshots of a chain of text communications to which Plaintiff was a party, but which Plaintiff had not produced in discovery, entitled "Cawksuckas." These text messages included photographs and videos that Plaintiff shared with Ms. Peters and others during August 2018, only weeks after the purported incident alleged in the Complaint. Those messages document two disturbing instances in August of 2018 during which Plaintiff and Gounelas trespassed onto Mr. Lemon's residential property, unbeknownst to Mr. Lemon until this litigation. One photograph shared in the text chain depicted Plaintiff grinning in front of Mr. Lemon's house while rolling on his back in Mr. Lemon's driveway. Another photograph depicted Plaintiff holding a lemon in front of his own genital area. *Ex. E., Pl,'s Ex. 1 from Isabel Peters' Jan. 7, 2021 Dep.* at IPSUBPOENA06–11, -022, and -026.; *Ex. F, Pl.'s Ex. 2 from Isabel Peters' Jan. 7, 2021 Dep.* at 3–7.

The "Cawksuckas" text messages that Peters produced, and which Plaintiff deliberately deleted, and failed to acknowledge had ever existed, further revealed that Plaintiff wanted to put Mr. Lemon's face on a t-shirt; referred to Mr. Lemon, who is openly gay, as "A REAL CAWKSUKAAAA!!"; and said that Mr. Lemon "smells like pussy." *Ex. F* at 16, 20, and 22.

Peters' production also included photographs that captured Plaintiff again attempting to approach Mr. Lemon on August 17, 2018. Mr. Lemon again expressed no interest or consent to participate in Plaintiff's overtures. Peters' production also included a video of Plaintiff toasting Mr. Lemon (out of Mr. Lemon's presence) on August 23, 2018. *Ex. F* at 8–9, 12.

Plaintiff has never produced any of these materials in discovery, or acknowledged their existence. He has also given conflicting statements regarding their disappearance. For instance, during his first deposition, which took place within days after Peters' production, he claimed to have

lost the images and text exchanges. *Ex. G*, *Tr. of Pl.'s Dec. 29, 2020 Dep.* at 168:20–169:1. During his second deposition, however, Plaintiff admitted that he intentionally deleted them. *Ex A* at 50:7–51:2.

Once Ms. Peters testified, it became clear why Plaintiff initially concealed her identity and withheld her contact information. *See Ex. H*, *Texts between Pl. and Gounelas* at LEMON-000101. During her deposition, Peters recalled that on the evening of the supposed incident, Plaintiff and Gounelas were "out of control, yelling and screaming" and repeatedly badgered Mr. Lemon, who wanted nothing to do with Plaintiff and Gounelas. *Ex. I*, *Tr. of Isabel Peters' Jan. 7, 2021 Dep.* at 28:9–17. Peters further testified that Gounelas was speaking to her at the time that Plaintiff claimed to have had his encounter with Mr. Lemon, and that Gounelas thus could not have observed any alleged encounter between Plaintiff and Mr. Lemon. *Id*. at 108:4–12. According to Peters, Gounelas even admitted that he did not see an alleged encounter, but that, "[h]e would just laugh it off and say, like, well, I was there, blah, blah, blah[.]" *Id*. at 146:8–22. Gounelas ultimately corroborated Ms. Peters' testimony on this point, admitting that, "[a]t some point they were behind me." *Ex. D* at 57:16–17.

Peters also testified that immediately following Plaintiff's encounter with Mr. Lemon, Plaintiff specifically told her that Mr. Lemon "didn't touch him," but merely "put his . . . hands in his face." *Ex. I* at 137:22–138:2.

In spite of the evidence refuting Plaintiff's account of the purported incident and his "emotional distress" damages, Plaintiff continued to conceal critical discovery. On December 21 and December 28, 2020, Plaintiff provided 14 additional pages of discovery (bringing his total production to 49 pages). This production consisted of third-party tweets, a news article, undated texts with a person named "Val," and an August 14, 2018 Instagram story from Plaintiff's "DJDusty 7" Instagram account. Notably, Plaintiff's counsel denied the very existence of the Instagram post

Peters saved, only to retract that assertion once the process for accessing that information was explained to her.[2]

### b. Plaintiff's First Deposition

On December 29, 2020, Plaintiff, understanding that the Defense was now aware that he had destroyed and concealed the messages with Gounelas, was deposed. Still, he testified that he produced every communication "I have had with George Gounelas." *Ex. G* at 10:3–5. With respect to his Instagram accounts, Plaintiff affirmed that he had "sent *everything that has anything to do with Don Lemon* to my counsel." *Id*. at 19:22–24 (emphasis added). Plaintiff likewise explained he had inadvertently lost the "Cawksuckas" chain because he "got a new phone in *September of 2018* and I did not update it, so I did not save this thread." *Id*. at 168:14–169:14 (emphasis added). He nevertheless testified: "I went through *all my texts*" from his current phone, "and *anything regarding Don Lemon or this case*, *I produced*." *Id*. (emphasis added). Each of these assertions proved false, as demonstrated by Gounelas' production in response to a Defense subpoena, a day after Plaintiff's deposition.

### c. Gounelas' Production in Response to Subpoena

On December 30, 2020, Gounelas produced the first of over 225 pages of messages between himself and Plaintiff, along with numerous photographs from the summer of 2018. These messages revealed, for the first time in the litigation, Plaintiff's efforts to bribe Gounelas in exchange for his testimony, Plaintiff's decision to conceal Peters' identity as a witness because he was worried that she might "ruin" the case, and Plaintiff's efforts to shape his own testimony.[3]

---

[2] The Court was troubled by this fact: "The fact that defense counsel has to tell you how to find Instagram stuff is also troubling." *ECF No. 56* at 9:23–25.

[3] These materials were produced to Plaintiff's counsel on December 31, 2020 (text messages) and January 4, 2021 (Instagram messages and pictures).

### III. The Court Orders Plaintiff to Comply with Discovery

In light of Gounelas' production, the parties submitted letters to the Court regarding discovery deficiencies on January 5, 2021. Plaintiff's counsel argued that "Defendant attempts to mislead this court by alleging that Plaintiff *withheld* 'hundreds' of documents relevant to his damages. *This statement is simply untrue*." *ECF No. 51* at 3 (emphasis added). Counsel was correct insofar as Plaintiff was not merely withholding discovery, he had *destroyed* it. Plaintiff's attorney was forced to acknowledge that she only became aware of the existence of these missing materials. *ECF No. 56* at 7:18–20 ("THE COURT: Did you produce them? MS. LEVY: No, your Honor. *So we hadn't seen them before*.") (emphasis added).

In remarking on Plaintiff's discovery production issues, the Court stated to Plaintiff's counsel:

> Okay. Well, here's my view of it. It sounds like you're minimizing the problem here, that your client did nothing to preserve relevant evidence here and in fact got rid of some of it, whether on purpose or not. So I'm going to order you to make that supplemental production and then I'm going to let the defendants make a motion for spoliation, and we'll see what it looks like when it's done because there seems to be an awful lot of coincidences when you add the Instagram account to the Twitter account to the texts, and I think an argument can be made that that looks like a pattern, and that pattern is a problem.[4]

### IV. Gounelas Recants and Admits Plaintiff Offered him Bribes

On January 18, 2021, Gounelas testified again at his continued deposition. Once confronted with the materials Plaintiff destroyed, including text messages regarding his role as a "star witness" for Plaintiff, Gounelas questioned whether the incident actually occurred. He stated: "Oh, God. I thought I saw it. I think I saw it. I said, I'm not a hundred percent sure if I saw it or not." *Ex. J, Tr. of Gounelas' Jan. 18, 2021 Dep.* at 101:19–22. When asked specifically: "[I]s it your testimony that

---

[4] *ECF No. 56* at 7:18–20.

you saw Mr. Lemon's hands make contact with [Plaintiff]'s face?", Gounelas hedged: "*I don't even know anymore.  I believe so.*" *Id*. at 112:2–8 (emphasis added).  Even on questioning by Plaintiff's counsel, he wavered, explaining he was "not sure at this point now . . . because when you ask something over and over again, now in your head you don't know" and "*you don't know if you see it in your imagination, or actually saw it at some point.*"  *Id*. at 136:15–137:9 (emphasis added).

Notably, the change in Gounelas' testimony followed the revelation that he had been offered payment for favorable testimony.  *Id*. at 121:4–7 ("Well, he's probably insinuating he'll give me money[.]"); 124:14–17 ("I'm assuming that he's, you know, *he'll give me something if he wins something.  That's, obviously, what he's insinuating.*") (emphasis added); 130:6–11 ("And he says, 'I got you.' I guess, again, like, I guess he's insinuating *if he gets anything he'll take care of me money-wise* -- [Objection]-- I'm guessing, obviously.") (emphasis added).

## V.  Plaintiff Fails to Cure the Deficiency

Plaintiff finally provided some additional discovery on January 15, 2021, consisting of mostly self-serving text messages and Instagram messages.  Still missing were a) all text messages with Gounelas prior to June 16, 2020; b) all Instagram message with Gounelas from Plaintiff's "DJDusty7" Instagram account; c) multiple Instagram messages with Gounelas from Plaintiff's "_coyot3_" Instagram account; d) the entirety of the "Cawksuckas" chain, and e) other potential communications that Plaintiff acknowledged he could not recall sending and/or deleting.  Some portions of a social media production were furthermore apparently doctored to remove all references related to his purchase of a firearm.  *Compare Ex. K*, *Instagram Messages Produced by Gounelas* at LEMON-000152–54, 160–61 (discussing firearm and concealed carry on Plaintiff's "_coyot3_" account), *with Ex. L*, *Instagram Messages Produced by Pl.* at PLTF-000653–663 (same exchange with all references to gun and concealed carry excised).

On February 3, 2021, Plaintiff's counsel explained that the production included "deleted material," but could not indicate what parts of the production constituted salvaged "deleted material." *Ex. M, Feb. 3, 2021 Letter from A. Levy* at 1. Plaintiff himself acknowledged that he does not know what "deleted material[s]" prior counsel recovered. *Ex. A* at 29:12–19, 30:1–6 (admitting he could not identify the "deleted material" in his production). His attorneys also represented that Plaintiff had two phones, "his current phone" which obtained in "September 2019"—not September 2018—and his "old phone." *Ex. M* at 2.

Two days later, on February 5, 2021, Plaintiff's counsel sought leave to withdraw. *ECF No. 58*. After an *ex parte* hearing, the Court granted that request on March 2. *ECF No. 62*.

## VI. Plaintiff Admits Deleting Evidence and Continues his Concealment

In its final discovery order, the Court permitted the Defense to depose Plaintiff to address "statements he made during his initial deposition about his search for, and retention of, text messages and social media posts, and about his subsequent search for, and production of, those documents." *ECF No. 75*.

At his August 6, 2021 deposition, Plaintiff claimed to have poor recollection of his communications with Gounelas, communications which he had previously minimized. Plaintiff stated, "I don't recall" or "I don't know" over 215 times in the 216-page deposition. When asked about his cell phones, his responses were contradictory. Plaintiff now claimed that the phone he had in July 15, 2018 was not *exchanged* in September 2018 (first deposition) or September 2019 (letter from counsel); rather, it was *stolen* "sometime in 2019." *Ex. A* at 37:8–19. Plaintiff then revealed a previously undisclosed phone, which he had from "sometime in 2019" until an unknown date. *Id.* at 34:14–17. Plaintiff could not confirm simple facts, such as whether the messages produced in

discovery came from his current phone.  *Id*. at 120:17–21.  He did, however, represent: "I can get that information" about his cell phones "to you and I will."  *Id.* at 33:4–9.  To date, he has not.[5]

Regardless, Plaintiff admitted that the texts, including the "Cawksuckas" chain and individual messages with Gounelas, Ms. Peters, and others, could have been on one of his phones after this suit was filed on August 11, 2019.  *Ex A* at 45:13–25, 48:2–50:9, 85:13–86:2, 88:6–21 (admitting he received relevant texts and photos from July and August 2018); 47:9–11 (stating he was "not sure" if he lost phone from July 2018 "after the suit was filed").  Minutes later, however, Plaintiff claimed that he "deleted almost every memory I had that summer" including "any pictures of Lemon or whatever" prior to obtaining legal representation.  *Id*. at 50:12–21.  Plaintiff never mentioned deleting the "Cawksuckas" materials during his first deposition, but rather claimed he neglected to move this evidence onto his new cell phone.  *Ex. G* at 168:20–22 ("I got a new phone in September of 2018 and I did not update it, so I did not save this thread.").

This testimony, too, proved false.  In *February 2019*, Plaintiff shared a photo of himself and Mr. Lemon (not taken with Mr. Lemon's knowledge or consent, and not during any voluntary social interaction), which he received from Gounelas and apparently understood "was important to save." *Ex A* at 85:13–86:2, 88:6–8; *Ex. O*, *Instagram Messages Produced by Pl.* at PLFT-000682–87. During that same Instagram exchange, Plaintiff discussed the prospect of litigation, including obtaining an attorney "barred in NY" to discuss his "testimony" and his "eye witnesses," Gounelas. *Id*. at PLFT-000682–83.  Plaintiff had not "deleted almost every memory" he had of the summer of 2018; rather, he selectively preserved only those "memories" that would not paint him in a bad light or undercut his claims of emotional distress.

---

[5]  This deposition occurred on Friday, August 6, 2021. Days later, Plaintiff represented, in stark contrast to his deposition testimony, that despite "reasonable inquiry" he could not confirm any information about his current or immediate-past cell phones.  *Ex. N*, *Pl.'s Resp. to Def's Req. for Adm.* at Nos. 1–3.

When asked about his texts with Gounelas from January 17 to June 16, 2020, which occurred during this litigation, Plaintiff admitted that he "apparently" deleted them "because I didn't have them in my phone." *Ex. A* at 142:11–15. The same was true for messages from his "DJDusty7" Instagram account, including communications with Gounelas from August 2018 until July 2019, *id*. at 185:16–18 (admitting he could not recall "when I deleted that message" from the "djdusty7" account), and his "_coyot3_" Instagram account, which contained messages with Gounelas from July 2018 until May 14, 2020, *id*. 207:14-17 (speculating that he may have deleted messages while "scrolling the phone" during "middle of the night" from his "_coyot3_" account).[6] Those relevant and discoverable messages, which post-date other communications produced in discovery[7], were destroyed because they severely damaged Plaintiff's credibility, along with that of Gounelas.

For instance, Plaintiff outright bribed Gounelas by repeatedly offering him cash and other gifts upon settlement or verdict, in exchange for his favorable testimony. *Ex. P, Instagram Messages Produced by Gounelas* at LEMON-243 ("You know I'll take care of ya"); LEMON-274–275 ("And you know we're celebrating after all of this shit" and "I got you. I'm a man of my word."). When confronted with these communications, Plaintiff claimed, "You know I will take care of you can be a very broad statement." *Ex. A* at 177:10–18. Even when confronted with the message containing dollar signs ("$$"), *Ex. P* at LEMON-267 (Plaintiff: "You know if I get $$ I'll

---

[6]  When asked during his deposition: "You *maintain* two Instagram accounts, correct?", Plaintiff responded: "Correct." *Ex. A* at 155:21–23 (emphasis added). Three days later, Plaintiff refused to "[a]dmit that you *maintain* the Instagram accounts '_coyot3_' and 'djdusy7,'" claiming he "is unable to effectively answer this request, and the term '*maintain*' is vague, ambiguous and not adequately defined[.]" *Ex. N* at No. 7 (emphasis added).
[7]  *See Ex. Q, Text and Instagram Messages Produced by Pl.* at PLTF-000229 & -237 (August 12, 2019 text messages), -280 (August 12, 2018 "DJDusty7" Instagram message), -701 (June 18, 2018 "_coyot3_" Instagram message).

take care of you, dude" and "[Y]ou and me giving a sworn statement might not be enough"), he flailed for nearly an entire page of testimony—until he finally admitted the obvious: "*Yes, apparently I was offering him money*" while discussing the need for "a sworn statement." *Ex. A* at 182:7–16 (emphasis added).[8]

The evidence also revealed Plaintiff's planned testimony. In an example from April 2020 (8 months before Plaintiff's deposition), he told Gounelas he purchased a firearm as "part of my testimony." *Ex. K* at LEMON-154. Later, while discussing his case and evidence, he remarked that he had obtained his "concealed carry Lol." *Id*. at LEMON-161. After wiping these messages, Plaintiff, as he planned, falsely testified that he bought a firearm out of concern for his "safety." *Ex. G* at 109:19–21.

The deleted messages also shed light on Plaintiff's manipulation of the discovery process. On June 9, 2020, ten days prior to exchanging Rule 26 disclosures, Plaintiff coordinated his "witness list" with Gounelas and discussed whether to disclose Isabel Peters as a witness. Plaintiff remarked that he was "not really sure about her." Gounelas suggested that he "try to move away from her" because "shes a cunt and will try to ruin this." Plaintiff gave a "thumbs up" to the latter message, then said "Ok" and "10-4!!" *Ex. H* at LEMON-99–101. Months later, after identifying her only as a "Jane Roe" in the Complaint, Peters was the *only witness* whose contact information was concealed, despite Plaintiff having this information. *Ex. A* at 44:9–10.

The concealment was for the purpose of hiding negative evidence. As discussed, at her ultimate deposition, Peters gave testimony that *directly undercut* Plaintiff's claims regarding the supposed assault; revealed *Plaintiff's own persistent, harassing behavior toward Mr. Lemon* on the

---

[8]  Returning to the Requests for Admission, on Friday, August 6, 2021, Plaintiff admitted to sending a message that said "if I get $$" from this lawsuit "I'll take care of you, dude." On Monday, August 9, he denied that he "offered to give a portion of the potential proceeds you might obtain as a result of this litigation to George Gounelas." *Ex. N* at No. 10.

night of the incident; shed light on Plaintiff's excursions to Mr. Lemon's residential property for the purpose of creating Instagram posts with lemons; and even revealed Plaintiff's rampant cocaine use throughout the summer of 2018.

Finally, Plaintiff admitted there is other relevant evidence he destroyed. Specifically, he deleted his entire Twitter account on August 12, 2019, the day after this suit was filed. He stated that he did not review any of the contents, including 1,900 tweets, and unknown numbers of messages and similar content. *Ex. A* at 209:15–22, 211:8–21, 212:6–8; 213: 4–8. During his first deposition, Plaintiff recalled exchanging messages about Mr. Lemon on this since-deleted account. *Ex. G* at 203:1–22. While Plaintiff states that he cannot recall the specifics of those now-lost materials, the recovered portions of every other deleted exchange all contain relevant, discoverable, and, most importantly, highly damaging evidence.

## LEGAL STANDARD

Under Fed. R. Civ. P. 37(e), a party may seek sanctions against an opposing party who lost electronically stored information (ESI). *See Best Payphones, Inc. v. City of N.Y.*, No. 1-CV-3942(JG)(VMS), 2016 WL 792396 (E.D.N.Y. 2016) (Fed. R. Civ. P. 37(e) requires a separate analysis for spoliation of ESI). The Court may use its inherent power to sanction bad-faith spoliation of evidence. *Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992).

If the Court finds that "the party acted with the intent to deprive another party of the information's use in the litigation," the Court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," and/or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). Even where intent is not established (and here, it is), sanctions, including dismissal, are warranted if the Court finds "prejudice" from the loss or destruction of information. *Id*. 37(e)(1);

14

Advisory Committee Note to 2015 Amendment. The Defense respectfully requests the Court invoke both its rule-based authority and its inherent power to level appropriate sanctions.

**ARGUMENT**

## I. Plaintiff Willfully Spoliated Critical Evidence in Bad Faith

Plaintiff destroyed evidence in bad faith, as demonstrated by his selective preservation of relevant evidence. His duty to not actively destroy evidence began in September 2018 when he recognized he was going to pursue an action against Mr. Lemon. The deleted materials amount to party admissions that go to the nature of the supposed "assault" and Plaintiff's claims of damages. The deleted materials include powerful impeachment evidence, only portions of which have been recovered. The nature of the destroyed evidence, coupled with Plaintiff's pattern of wiping incriminating content from multiple devices and social-media accounts, demonstrate Plaintiff's malicious intent to deprive the Defense of evidence, and submit a false narrative to the Court.

### a. The Duty to Preserve Evidence Attached in September 2018

"[W]hen a party should have known that the evidence may be relevant to future litigation," the duty to preserve—or, in this case, to not actively destroy—relevant evidence attaches. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). The "should have known" standard is not a high bar. Courts within the Second Circuit recognize that a party has a duty to preserve evidence once he recognizes that he has a potential cause of action and litigation may ensue. *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (duty to preserve arose when party "recognized the possibility that [the plaintiff] might sue" months before receiving any formal notice). The duty to not affirmatively destroy is even more straightforward: "[A]nyone who *anticipates being a party . . . to a lawsuit* must not destroy unique, relevant evidence that might be useful to an adversary." *Williams v. New York City Transit Auth.*, 2011 WL 5024280, at *3

(E.D.N.Y. Oct. 19, 2011) (*quoting Zubulake v. UBS Warburg L.L.C.*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)) (emphasis added).

Here, Plaintiff repeatedly testified that he decided to pursue this action against Mr. Lemon in September 2018. *Ex. G* at 104:2–9 (explaining he decided to file suit three months after the incident), 190:20–191:3 (discussion with mother in September 2018); *Ex. A* at 15:7–8 ("mid-September" 2018 when he decided to pursue legal action). He has also insisted that his damages began to accrue on July 15, 2018. *Ex A* at 13:10–12 (damages began to accrue "[t]hat night, yes").

Plaintiff further admitted he understood that he should preserve evidence "about the alleged incident," "communications with other witnesses," "evidence that talked about [his] emotional damages," and proof "that tended to show whether [he was] lying or telling the truth." *Ex. A* at 23:18–24:13. He also agreed that "most people would know that" "destroying evidence is bad." *Id*. at 24:20–25. Accepting Plaintiff at his word, he was aware that: a) he immediately began to suffer alleged emotional damages on July 15, 2018; b) he decided to pursue litigation in September 2018; and c) he knew that he should preserve relevant evidence.

Plaintiff's discovery responses corroborate this understanding because he did, in fact, preserve select communications from June, July, and August 2018. However, simultaneously, he systematically wiped contemporaneous and highly damaging content from those same accounts. For instance, he produced Instagram messages from the summer of 2018, *see Ex. Q* at PLTF-000280 (August 12, 2018 "DJDusty7" Instagram message), -701 (June 18, 2018 "_coyot3_" Instagram message), and saved an August 2018 photo of him attempting to interact with Mr. Lemon subsequent to the alleged incident, after seeing him outside in public, *see Ex. O* at PLTF-000682–683. Plaintiff admitted that he received that photograph from Gounelas likely in the summer of 2018 and knew "it was important to save this picture," *Ex. A* at 88:6–8, yet he deleted similar and contemporaneous photos from the "Cawksuckas" thread. To be clear, in numerous instances,

involving thousands of messages, posts, and images, Plaintiff deliberately curated the evidence in order to remove unfavorable material.

**b. The Evidence Was Critical**

As of September 2018, Plaintiff was obligated to "save any evidence that [he] 'reasonably should know is relevant' to an anticipated action.'" *Williams v. Geraci*, 2020 WL 5848738, at *12 (E.D.N.Y. Sept. 30, 2020) (Locke, J.) (*quoting Taylor v. City of New York*, 293 F.R.D. 601, 611 (S.D.N.Y. 2013)). Plaintiff's and Gounelas' second depositions highlight the power of this proof.

For instance, Gounelas, once confronted with Plaintiff's repeated offers of payment, was no longer sure that he saw "the hand motion onto the nose and the whole 'pussy or dick' thing." *Ex. J* at 101:6–8, 19–22. When asked directly: "[I]s it your testimony that you saw Mr. Lemon's hands make contact with [Plaintiff]'s face?", Gounelas wavered again: "I don't even know anymore. I believe so." *Id.* at 112:2–8 (emphasis added).

Without this evidence Plaintiff's own fabrications would have gone unchecked. For instance, in an attempt to establish Gounelas as an "independent" witness, Plaintiff testified that he was not even really true friends with Gounelas: "I really don't know my feelings on George to be honest with you." But in private message after message to Gounelas, he let his true feelings show: "*Dude. I love you*…I hope you know how much I mean it…*We didn't meet by chance*…Call me when you can." *Ex. R* (emphasis added). Furthermore, while Plaintiff publicly scoffed at the notion that this case was "about money," stating, "I don't even care about the money. Like I want accountability. That's my pursuit here," in deleted texts, Plaintiff "spitball[ed] some ideas" for a book entitled, "You shoulda paid up, Lemon," adding that Mr. Lemon will "have to pay and the whole world knows." *Ex. S*. Plaintiff also spontaneously testified that he "went and got a concealed carry, because I'm looking over my shoulder every day of the week," *Ex. G* at 109:18–20, which

was, in reality, manufactured "testimony" that he had planned 8 months earlier. *Ex. K* at LEMON-000152–53, 160–61 (discussing firearm as part "of my testimony").

The texts, photographs, and related social-media posts from the "Cawksuckas" communication chain likewise undercut Plaintiff's claim that "lived in fear of running into Mr. Lemon." *ECF No. 1-2* at ¶27. In fact, *Plaintiff stalked Mr. Lemon* and made multiple visits to his home in August 2018. Once there, he and Gounelas posed for photographs:


*Plaintiff posing with a lemon in front of Mr. Lemon's house*


*Plaintiff and Gounelas in Mr. Lemon's driveway*

When confronted with the image on the left (from August 23, 2018), Plaintiff claimed it was the "[f]irst and last" time he visited Mr. Lemon's property. *Ex. G* at 29:7–14. However, upon being confronted with the second photograph (on the right), Plaintiff changed his account and was no longer sure many times he went to Mr. Lemon's property, uninvited. *Id*. at 68:8–10.

### c. Critical Evidence was Destroyed in Bad Faith

Plaintiff acted in "bad faith" because he intended "to obstruct the opposing party's case." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001). His conduct also violated Rule 37(e) when he "acted with the intent to deprive another party of the information's use in the litigation." Before the Defense obtained these materials from third parties, Plaintiff never so much as acknowledged their existence. He has made no remedial efforts, such as contacting his cell-phone provider or Twitter, to recover this information. There is no evidence that Plaintiff's Instagram messages, texts, pictures, or previous Twitter account were deleted as part of any routine

procedure or similar mechanism. Indeed, Plaintiff's deletions were intentional and were specifically designed to deprive Mr. Lemon of evidence in the litigation.

Moreover, Plaintiff's secret and persistent offers to compensate his own witness for favorable testimony constitutes egregious misconduct. *Ex. P* at LEMON-267 (Plaintiff: "You know if I get $$ I'll take care of you, dude" and "[Y]ou and me giving a sworn statement might not be enough"); *Ex. A* at 182:7–8 ("Yes, apparently I was offering him money."). Plaintiff's concealment of these communications was in bad faith, and was known to be in bad faith at the time. To be clear, Plaintiff deliberately curated his earlier communications from the same Instagram account in order to purge any unfavorable messages. *Ex. Q* at PLTF-00280 (August 12, 2018 "DJDusty7" Instagram message).

Similarly, while Plaintiff preserved innocuous texts from August 2019 from others, he deleted damaging texts from June 2020 with Gounelas. *Ex. T.* More importantly, the contents of those very same deleted messages prove his intent: to "move away from" Peters as a witness, and even conceal her identity out of fear that she might "ruin" his case. *Ex. H* at LEMON-99–101.

Plaintiff's concerns about Peters were well founded. Once Peters was subpoenaed, she produced the "Cawksuckas" chain,[9] which thoroughly undermined Plaintiff's allegations that he "lived in fear of running into Mr. Lemon," was "socially isolated," and suffered from overwhelming "feelings of shame, humiliation, anxiety, anger, and guilt." *ECF No. 1-2* at ¶¶ 26–28. Those communications in fact proved the opposite of what Plaintiff claimed – that in fact *Plaintiff* pursued *Mr. Lemon* throughout the Summer of 2018 as part of a pattern of harassing behavior, which started

---

[9] On August 6, Plaintiff acknowledged that he had received the "Cawksuckas" texts, photographs, and videos on the phone he had in July 2018, but failed to preserve them. *Ex A* at 62:7–20 (acknowledging he received those messages), 68:19–23 (admitting to deleting the chain). Seventy-two hours later, Plaintiff, despite affirming that he made "reasonable inquiry from available sources" nevertheless refused to acknowledge that he received those same photographs and, in turn, failed to preserve those messages. *Ex. N* at Nos. 36–38.

with his relentless, unwanted overtures toward Mr. Lemon at the bar in July of 2018. As Plaintiff and Gounelas predicted, Peters' testimony about the alleged incident indeed "ruined" their concocted narrative.

Peters further unequivocally testified that Gounelas did not witness the alleged incident, *Ex I* at 108:4–24 (Peters was "talking to George" when Plaintiff arrived and "said what Don did, and George then yelled and was like oh, my god, no way, blah, blah, blah"), a fact re-enforced by Gounelas' recantation. Peters further recalled that Plaintiff's *original* account was that Mr. Lemon waved his hands in Plaintiff's face, *id*. at 109:19–23 ("Dustin explicitly said Don put his . . . hands in [his] face . . . [l]ike not touching, like in front.") —a detail corroborated by texts from March 2019, *Ex. E* at IPSUBPOENA031 (Peters: "Don didn't even touch him." Grace O'Donnell (another witness named by Plaintiff): "Ridiculous. Very ridiculous.").

In sum, Plaintiff's actions prove he sought to destroy and conceal evidence from the Defense and this Court. His continual manipulation of the discovery process is evidence of his bad-faith intent to withhold evidence from the Defense.

### d. Scope and Content of Other Deleted Materials

When "a party destroys evidence in bad faith, *that bad faith alone* is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (emphasis added). Thus, if the Court concludes Plaintiff's engaged bad-faith conduct (he did), it can presume that the other missing proof was likewise relevant. For the sake of completeness, the Defense outlines other evidence this Court can rely upon to find the unrecovered evidence was relevant, discoverable, and critical.

Most notably, Plaintiff deleted his entire Twitter account on August 12, 2019—the very day after this suit was filed. Plaintiff admitted that "[a]s soon as this all went public I deactivated the

account without even scrolling through it." *Ex A* at 213:6–8. He also conceded that he may have made statements about this litigation, including reaching out to attorneys, *id.* at 19:6–8, posts about CNN, *id.* at 60:3–16 ("Q. The tweets from your old account which discuss CNN, those are gone, right? [Objection]. [A.]: I deleted that old account, yes."), and potentially tweeting at former-President Trump about the assault, *id.* at 172:3–5 ("Q. Okay. Mr. Hice, did you ever tweet anything like this at Donald Trump? A. I don't know. I don't remember."). And if Plaintiff's present Twitter account—encompassing over 60% of Plaintiff's production—is any indication, there were piles of relevant details on his now-deleted account.

Similarly, he recalled texts with Gounelas and others in which he discussed Mr. Lemon and shared evidence. *Ex. A* at 49:12–15 (Gounelas sent him photograph) 88:14–18 (others may have texted him the picture). The "Cawksuckas" chain, too, is incomplete because Plaintiff claimed that Peters "picked and choosed a bunch of different messages" because "that text thread was going on all summer long." *Ex. G* at 166:3–18. He later admitted that there were "a lot" of texts about Don Lemon because it was "a daily thing" and "a running joke of the Hamptons." *Ex. A* at 63:3–17. Yet none of those materials were produced in discovery.

If Plaintiff's destruction of evidence serves as any guide, it is difficult to fathom what other incriminating materials he destroyed. Plaintiff himself conceded that he does not know the full world of the evidence that he destroyed, and acknowledged that there may be more. Plaintiff's conduct and the record both support a finding that the other destroyed evidence was discoverable and likely critical. Thus, Plaintiff's actions prejudiced the defense and, more fundamentally, prove he sought to manipulate the judicial process. *See Holmes v. U.S. Bank*, 2009 WL 1542786, at *8 (S.D. Ohio May 28, 2009) (dismissing case based on "[p]laintiff's conduct in withholding documents," lying during her deposition, and "offer[ing] to bribe" a witness, which caused "substantial harm to the court system").

## II.     Lesser Sanctions Cannot Restore the Status Quo

The Second Circuit has emphasized that dismissal is appropriate if there is a showing of willfulness or bad faith on the part of the sanctioned party. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Destroying select, unfavorable portions of text records and photographic evidence in the face of litigation, while maintaining other seemingly "favorable" evidence, is the epitome of "bad faith." If forced to proceed to trial under circumstances deliberately created by Plaintiff, it is a guarantee that the Defense will be operating with incomplete facts. Dismissal with prejudice is wholly warranted.

### a.    Adverse Inference(s), Fines, and Preclusion Cannot Level the Playing Field

It is appropriate to consider the effect, if any, that lesser sanctions would have. *West*, 167 F.3d at 779. In making this evaluation, the Court must consider whether these sanctions will: a) deter similar conduct in the future; b) obviate the risk of an erroneous judgment; and c) restore the parties in the same position they would have been, absent the wrongful destruction of evidence. *Id*.

An adverse inference instruction would not be a sufficient remedy given the conduct at issue. It would leave unpunished Plaintiff's deceitful discovery practices, perjury, and efforts to bribe his only "independent" witness. Plaintiff "attempted to create false testimony on the dispositive facts underlying [his] lawsuit" by repeatedly offering bribes to Gounelas, then concealing those efforts. *Young v. Off. of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C. 2003) (dismissing a case based, in part, on a party's effort to bribe a witness). As Plaintiff was forced to admit, his offer of bribery pre-dates any public disclosure of these allegations. *Ex. A* at 181:19–182:2. *See Holmes*, 2009 WL 1542786 at *8-*9 (concluding lesser sanctions were insufficient because party concealed evidence, committed perjury, and offered to bribe a witness). There is furthermore a risk of erroneous judgment based upon the fabricated record created by Plaintiff. The destruction cannot be undone, and causes undue prejudice to the Defense.

Moreover, as a practical matter, it is notable that an adverse inference instruction would require the jury to make adverse findings against the only witnesses that Plaintiff intends to offer in this matter – himself and Gounelas – essentially resulting in a directed verdict. Proceeding to trial under such circumstances would be a waste of judicial resources, would result in unnecessary costs for the Defense, and would fail to deter future litigants from engaging in similar outrageous misconduct.

Striking Gounelas' testimony would be insufficient as Plaintiff's own conduct has turned him into a critical Defense witness. It is difficult to imagine the stipulations or jury instructions the parties and the Court would need to craft in order to ensure that the jury was accurately informed of Gounelas' involvement, while also excising his tainted and recanted account of the alleged incident. *See Young*, 217 F.R.D. at 71 (concluding that evidentiary sanctions including witness preclusion would be so severe as "to further waste of court resources and time").

Monetary sanctions, too, would be insufficient if Plaintiff cannot afford to pay. *See Ramsey v. Broy*, 2010 WL 1251199, at *6 (S.D. Ill. Mar. 24, 2010) (costs and fees insufficient sanction if party cannot pay). In any event, courts have repeatedly found that monetary sanctions—even in combination with other remedies—are insufficient where a party has offered to bribe a key witness and presented perjured testimony. *Holmes*, 2009 WL 1542786, at *9 ("Similarly, simply imposing a monetary sanction would be to let Plaintiff buy her way out of trouble and would likely be insufficient as a deterrent to others."); *Young*, 217 F.R.D. at 70 (fines insufficient where plaintiff engaged in "witness tampering and suborning perjury"). Accordingly, lesser sanctions are not warranted on these facts.[10]

---

[10]   In the event this Court orders monetary sanctions, *see Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 393 (S.D.N.Y. 2015) (adverse inference and attorney fees awarded after party deleted one Facebook posting and a few text messages), we respectfully request that it enter a stay to give Plaintiff a set amount of time to pay any such costs

### b. Terminating Sanctions can Restore Order

Plaintiff's misconduct, by his own account, began in September 2018 when he selectively deleted incriminating texts, snapshots, and social media posts from the "Cawksuckas" chain. It continued into 2019 as he sought legal representation, brought Gounelas into the fold, and repeatedly offered to compensate him for favorable testimony upon receipt of settlement. Plaintiff's sworn complaint and two depositions are littered with demonstrably false statements. His wrongdoing continues to this day. If this case is permitted to proceed, Plaintiff's efforts will not be abated. Rather, he will continue to create needless, costly work for the Defense and this Court.

Faced with similar conduct, courts have reasonably concluded the appropriate remedy is dismissal. *Young*, 217 F.R.D. at 69 (dismissing case after evidence showed that plaintiff made "an illegal attempt to bribe a witness in this case in exchange for false testimony"); *Quiroz*, 2008 WL 3540599 at *9 (dismissing a case because the plaintiff "was willing to tamper with essential fact witnesses" by offering bribes); *Holmes*, 2009 WL 1542786 at *9 (finding lesser sanctions insufficient in case where party offered to bribe witness); *Ramsey*, 2010 WL 1251199 at *1 (dismissing case as sanction where plaintiff "attempt[ed] to bribe a neighbor in exchange for fabricated supporting testimony"); *Coral Grp., Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 443 (W.D. Mo. 2012) (dismissing case for spoliation and bribing witnesses). That is the appropriate outcome here. Terminating sanctions are further warranted in order to deter future conduct of this nature by litigants in other matters. If terminating sanctions are not imposed under these egregious circumstances, future litigants will be emboldened to destroy evidence, offer financial incentive to witnesses, and use this Court to pursue frivolous, opportunistic litigation.

---

*before* the parties engage in further motion practice. Appropriate monetary sanctions would include: a) fees and costs associated with Gounelas' second deposition; b) fees and costs associated with Plaintiff's second deposition; and c) fees and costs associated with litigating this motion.

## **CONCLUSION**

We respectfully request the Court grant the Defense Motion for Terminating Sanctions,

dismiss this case in its entirety with prejudice, and award Mr. Lemon reasonable costs and attorneys'

fees, along with any other sanctions the Court deems appropriate.


Dated: 09/10/2021                                    **ARMSTRONG TEASDALE LLP**

                                    By:    /s/ Caroline Polisi    
                                        Caroline Polisi, Esq.
                                        919 Third Ave, 37th Floor
                                        New York, NY 10022
                                        Telephone: 212.209.4359
                                        Fax: 212.409.8385
                                        cpolisi@atllp.com

                                        Daniella Gordon, Esq.
                                        2005 Market St., 29th Floor
                                        One Commerce Square
                                        Philadelphia, PA 19103
                                        Telephone: 267.780.2017
                                        Fax: 215.405.9070
                                        dgordon@atllp.com

                                        *Counsel for Defendant, Don Lemon*