UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DUSTIN HICE,

                     Plaintiff,

      -against-

DON LEMON,

                     Defendant.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
19-cv-4666 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this New York common law diversity action, pursuant to this Court's November 17, 2021 Memorandum and Order and Report and Recommendation (the "Sanctions Opinion" or "Sanctions Op."), *see* Docket Entry ("DE") [93], Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37(e), and the Court's inherent authority, is Defendant Don Lemon's ("Defendant" or "Lemon") Motion for Attorneys' Fees. *See* Defendant's Motion for Attorney Fees Pursuant to the Court's Report and Recommendation of November 17, 2021 ("Defendant's Motion" or "Def. Mot"), DE [106]. By way of Complaint filed on August 7, 2019, Plaintiff Dustin Hice ("Plaintiff" or "Hice") commenced this litigation against Defendant, asserting claims for: (1) assault and battery; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress. *See* Complaint ("Compl."), DE [1-2].

On November 17, 2021, after Defendant's submission of his motion for sanctions due to Plaintiff's spoliation of evidence, *see* DE [82], this Court issued the Sanctions Opinion, and: (1) awarded Lemon reasonable attorneys' fees and costs associated with Hice's destruction of evidence and in bringing Defendant's motion for sanctions; (2) recommended that Lemon be "given an adverse inference jury

1

instruction at trial"; and (3) directed Defendant to file Defendant's Motion on or before February 4, 2022. *See* Sanctions Op. at 22. Lemon filed Defendant's Motion on February 2, 2022, *see* Def. Mot., which Hice opposes. *See generally* Plaintiff's Response in Opposition to Defendant's Motion ("Plaintiff's Opposition" or "Pl. Opp."), DE [107]. For the reasons set forth below, the Court grants Defendant's Motion in part and denies it in part, and awards Lemon $77,119.33 in attorneys' fees and costs.

I. **BACKGROUND**

A. **The Parties' Initial Interactions**

The following facts are taken from the Sanctions Opinion, as well as the parties' pleadings, affidavits, and exhibits. Except where indicated, these facts are not in dispute.

Plaintiff is a Florida domiciliary, while Defendant a new York citizen. *See* Compl. ¶¶ 3-4. Over the summer of 2018, Hice lived in the Hamptons, and worked at an establishment identified as the Old Stove Pub, a restaurant and bar located in Sagaponack, New York. *Id.* at ¶¶ 7-8, 11. On or about July 15, 2018, in celebration of a financially successful Independence Day weekend, Plaintiff's boss, George Gounelas ("Gounelas"), brought Hice, "Jane Roe," an individual whose identity was later disclosed during discovery, and others to a bar identified as Murf's Backstreet Tavern ("Murf's"), located in Sag Harbor, New York. *Id.* at ¶¶ 12-13.

When the group arrived at Murf's, Hice noticed Lemon – a well-known journalist and television personality – at the bar, enjoying a drink with a group of friends. *See id.* at ¶ 14. Plaintiff attempted to get Defendant's attention by offering

him a lemon drop, a type of vodka cocktail. *Id.* Lemon declined Hice's offer, and responded that he (Defendant) was "just trying to have a good time." *Id.* at ¶ 15.

Although the two initially went their separate ways, Plaintiff alleges that Lemon – at some point later in the night – approached him, Roe, and Gounelas. *See id.* at ¶¶ 16-17. Hice claims that Lemon then stuck his (Defendant's) hand down his own pants, rubbed his genitals, then shoved his index and middle finger underneath Plaintiff's nose, and asked, "Do you like pussy or dick?" *Id.* at ¶¶ 18-19. This allegedly shocked and humiliated Hice, prompting him to leave the bar. *See id.* at ¶¶ 21-22.

### A. Pre-Discovery Procedural History

Based on the above, Plaintiff commenced this action against Defendant on August 7, 2019 in the Suffolk County Supreme Court, seeking injunctive relief, damages, and attorneys' fees in connection with Lemon's allegedly "unprovoked" physical and verbal assault and battery against him (Hice). On August 13, 2019, Defendant removed the matter to this Court on the basis of diversity jurisdiction. *See* DE [1-1]. On August 22, 2019, Hice sought leave to have the matter remanded back to the Suffolk County Supreme Court, *see* DE [7], which the Honorable Joan M. Azrack denied on November 26, 2019. *See* DE [14]. The parties jointly moved to dismiss Hice's cause of action for negligent infliction of emotional distress on June 1, 2020, *see* DE [39], which Judge Azrack granted on July 2, 2020. *See* July 2, 2020 Electronic Order. Defendant filed his Answer on June 3, 2020. *See* DE [40].

### B. The Parties' Initial Discovery Exchange

The parties repeatedly clashed during discovery. *See* Sanctions Op. at 3. Initially, although Rule 26 disclosures were exchanged on June 19, 2020, Hice

provided no information about Jane Roe. *See id.* The parties appeared before this Court for an initial conference on June 29, 2020, after which point discovery commenced. *See* DE [43].

A month later, on July 20, 2020, the parties exchanged initial discovery demands. *See* Sanctions Op. at 4. In response to Lemon's request intended to capture any relevant social media/text message communications in Hice's possession, Plaintiff's initial document disclosure consisted of only 32 pages of discovery, comprised of: (1) two pages of income information; (2) 26 pages reflecting Hice's efforts to seek mental health counseling in 2020; (3) four pages of text messages between Plaintiff and an individual identified as Nick Carlton; and (4) several text messages referencing Gounelas, but no communications between them. *Id.* Hice objected to providing additional documents, claiming such social media posts were in the public domain, but provided Jane Roe's real name – Isabel Peters ("Peters").[1] *Id.* During Gounelas's first deposition, held on November 20, 2020, he likewise minimized the extent of his communications with Hice, and testified that he and Plaintiff communicated sparsely, never about media coverage of the case. *See id.*

---

[1] Later disclosed evidence establishes that, prior to disclosing Peters's identity, Hice and Gounelas discussed keeping Peters away from the litigation. Specifically, Plaintiff asked Gounelas: "What should I say about Isabel [Peters]? Was she there?...I'm not really sure about her[.]" DE [82-10] at 79. Gounelas responded that he "would try and move away from her[.] She's a cunt and will try to ruin this[.]" *Id.* at 80. Hice agreed, "liking" Gounelas's text about Peters being a "cunt" and responding "Ok…10-4!" *Id.*

## C. Deposition of Isabel Peters

On or about December 16, 2020, Hice noticed depositions for Peters and her father. *Id.*[2] Prior to her deposition, Peters produced screenshots of a text message thread entitled "Cawksuckas," to which Plaintiff was a party but failed to produce. *See* DE [82-7] at 14-19. The substance of these texts included: (i) photographs and videos that Hice shared with Peters and others from August 2018 – weeks after the alleged assault – depicting Plaintiff and Gounelas on Lemon's property at night, rolling around and holding lemons over their genitals; (ii) texts from Hice evidencing his desire to create shirts with Defendant's face on them with the text "A REAL CAWKSUKAAAA!!" and stating that Lemon "smells like pussy"; (iii) photographs of Hice on August 17, 2018 again attempting to approach Defendant; and (iv) a video of Plaintiff toasting Lemon on August 23, 2018, out of Defendant's presence. *See id.*

Hice made a supplemental disclosure after Peters's deposition, consisting of an additional 14 pages, which included third-party tweets, a news article, undated texts between Plaintiff and a person identified only as "Val," and an August 14, 2018 Instagram story from Hice's "DJDusty7" Instagram account. *See* DE [82-8].

## D. Plaintiff's First Deposition and Gounelas's Subsequent Production

Plaintiff was first deposed on December 29, 2020, wherein he claimed to have produced every communication he had with Gounelas, produced everything he had on Instagram, and explained that he inadvertently lost the "Cawksuckas" chain because he got a new phone in September 2018. *See* Transcript of December 29, 2020

---

[2] It is not clear whether Peters's father was actually deposed.

5

Deposition of Dustin Hice ("Hice Dep."), DE [82-9], 168:20-169:1. Plaintiff also stated that he "went and got a concealed firearm carry [permit], because [he was] looking over [his] shoulder every day of the week." Hice Dep. 109:13-23.

The next day, in response to a subpoena issued by Defendant, Gounelas produced over 225 previously undisclosed messages between himself and Plaintiff, along with numerous photos taken during the summer of 2018. *See* Sanctions Op. at 6. These messages included conversation about Hice paying Gounelas following a favorable outcome of the lawsuit, discussion about how he purchased a weapon as part of his testimony, and discussion about disclosing Peters as a witness. *Id.* On January 5, 2021, in response to this production, the parties submitted letters concerning these deficiencies. *See* DEs [50], [51]. At a January 6, 2021 conference, this Court ordered Plaintiff to make a supplemental production. *See* DE [53].

### E. **Gounelas's Second Deposition and Hice's Subsequent Production**

On January 15, 2021, pursuant to this Court's direction, Plaintiff made a subsequent disclosure consisting of text messages and Instagram messages. *See* Sanctions Op. at 6. Absent from this disclosure, however, were most messages between Hice and Gounelas prior to June 16, 2020, the above-mentioned "Cawksuckas" thread, and other communications. *See id.* at 7. On January 18, 2021, in his continued deposition, Gounelas recanted his prior testimony, making clear that he did not know if the alleged assault and battery actually happened or, at minimum,

6

if he saw it. *See id.* Moreover, Gounelas conceded that Plaintiff would pay him if he was successful in the case. *Id.*[3]

Hice admitted to offering to pay Gounelas as well, during his August 6, 2021 supplemental deposition, which Magistrate Judge James M. Wicks ordered to be limited to questioning regarding search for and retention of documents. *Id.*[4] At this deposition, Plaintiff offered contradictory testimony regarding his cell phones, which changed from getting a new phone in September 2018, to getting a new phone in September 2019, to finally, having his old phone stolen in 2019. *See* Transcript of August 6, 2021 Deposition of Dustin Hice ("Hice Supp. Dep."), DE [82-3], 37:8-21. Moreover, Hice also revealed that he used an additional phone at some point in 2019. *See id.* Crucially, however, Plaintiff stated that he had deleted almost every memory he had related to the summer of 2018, including any pictures of Defendant, prior to obtaining counsel – a position squarely refuted by the Gounelas subpoena production, which included a picture of Defendant and discussion of the importance of document retention in anticipation of litigation. *Id.* Hice also conceded that he deleted his entire Twitter account on August 12, 2019, less than a week after this action was commenced. *See* Hice Supp. Dep. 208:2-6.

---

[3] On February 4, 2021, Plaintiff's counsel explained that Hice's supplemental production included "deleted material," but could not indicate what parts of the production constituted salvaged "deleted material," and further represented that Plaintiff had two phones, "his current phone" which obtained in "September 2019" – not September 2018 – and his "old phone." *See* DE [57]. Two days later, on February 5, 2021, Plaintiff's counsel sought leave to withdraw. *See* DE [58]. After a March 2, 2021 *ex parte* hearing, this Court granted that request, and stayed the matter until April 5, 2021. *See* DE [62].

[4] This matter was transferred from this Court to Magistrate Judge Wicks on May 13, 2021, *see* May 13, 2021 Electronic Order, but transferred back to this Court on October 7, 2021. *See* DE [86].

7

F. **Defendant's Motion for Sanctions and Attorneys' Fees**

On September 10, 2021, Lemon moved for sanctions and attorneys' fees based on Hice's spoliation of evidence. *See* DE [82]. On November 17, 2021, this Court issued the Sanctions Opinion, and: (i) awarded Lemon reasonable attorneys' fees "associated with Hice's destruction of evidence and in bringing" Defendant's sanctions motion; (2) recommended that Lemon receive an adverse inference jury instruction at trial; and (3) directed Defendant to file Defendant's Motion on or before February 4, 2022. *See* Sanctions Op. at 22. Judge Azrack adopted the Sanctions Opinion in its entirety on December 21, 2021. *See* DE [102]. Lemon filed Defendant's Motion on February 2, 2022, which Hice opposes. *See generally* Def. Mot; Pl. Opp. For the reasons set forth below, the Court grants Defendant's Motion in part and denies it in part, and awards Lemon $77,119.33 in attorneys' fees and costs.

II. **DISCUSSION**

Lemon seeks an award of attorneys' fees and related costs totaling $106,490.38. *See generally* Def. Mot. This award is comprised of fees for services billed at hourly rates of $750.00-775.00, $550.00-575.00, and $450.00-475.00 by three attorneys, respectively – Caroline Polisi ("Polisi"), Daniella Gordon ("Gordon"), and Christopher Lynett ("Lynett"). In support of his application, Defendant submits Declarations of Legal Services prepared by Polisi, Gordon, and Lynett, all of whom currently represent Lemon. *See* Declaration of Caroline Polisi in Support of Defendant's Motion ("Polisi Decl."), DE [106-1], ¶¶ 2-3; Declaration of Daniella Gordon in Support of Defendant's Motion ("Gordon Decl."), DE [106-3], ¶¶ 2-3; Declaration of Christopher Lynett in Support of Defendant's Motion ("Lynett Decl."),

DE [106-4], ¶¶ 2-3.[5] For the reasons set forth below, the Court grants Defendant's Motion in part and denies it in part, and awards Lemon $77,119.33 in attorneys' fees and costs.

### A. <u>Reasonableness of Hourly Rates Billed</u>

To determine whether attorneys' fees are reasonable, courts calculate the "'presumptively reasonable fee'" by multiplying the reasonable hourly rate for each attorney by the reasonable number of hours expended. *Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 617 (E.D.N.Y. 2017) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

Broadly speaking, when considering what is "reasonable," courts consider "the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Centro de la Comunidad Hispana de Locust Val. V. Town of Oyster Bay*, No. 10-cv-2262, 2019 WL 2870721, at *4 (E.D.N.Y. June 18, 2019), *report and recommendation adopted*, 2019 WL 2869150 (E.D.N.Y. Jul. 3, 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 190 (2d Cir. 2007)). Under the "forum rule," the reasonable hourly rate is "'the rate a paying client would be willing to pay,' based on the 'prevailing [hourly rate] in the community…where the district court sits.'" *E. Sav. Bank, FSB v. Whyte*, No. 13-cv-6111, 2015 WL 790036, at

---

[5] According to Lemon's attorney declarations, Armstrong Teasdale, LLP ("Armstrong Teasdale"), defense counsel's firm, raised the hourly rates charged for their attorney services mid-litigation from 2020 to 2021. *See* Polisi Decl. ¶ 2; Gordon Decl. ¶ 2; Lynett Decl. ¶ 2.

9

*8 (E.D.N.Y. Feb. 24, 2015). *See also Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011). To determine this amount, courts consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*ComLab, Corp. v. Kal Tire*, No. 17-cv-1907, 2019 WL 2144307, at *4 (S.D.N.Y. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2137135 (S.D.N.Y. May 16, 2019) (citations omitted). Separate findings for each factor, however, are unnecessary. *See Montefiore Med. Ctr. v. Local 272 Welfare Fund*, No. 09-cv-3096, 2019 WL 4565099, at *5 (S.D.N.Y. Sept. 19, 2019) (citation omitted). Rather, the factors should be considered together and no one factor is dispositive. *See id.* (citing *C.B. v. New York City Dep't of Educ.*, No. 18-cv-7337, 2019 WL 3162177, at *5 (S.D.N.Y. Jul. 2, 2019)).

Here, Defendant seeks an award based on the following hourly rates: (i) $750.00-775.00 for Polisi, an Armstrong Teasdale litigation partner who was admitted to practice in New York in 2009, and was engaged to lead Lemon's defense in the current matter, *see* Polisi Decl. ¶¶ 2-3; (ii) $550.00-575.00 for Gordon, also an Armstrong Teasdale partner who was admitted to practice in Pennsylvania in 2005 and New Jersey in 2006, and serves as co-counsel to Polisi in the current matter, *see*

Gordon Decl. ¶¶ 2-3; and (iii) $450.00-475.00 for Lynett, an Armstrong Teasdale litigation associate who was admitted to practice in Pennsylvania and Massachusetts in 2014, and is assisting Polisi and Gordon in Lemon's defense. *See* Lynett Decl. ¶¶ 2-3.

In support of the requested rates, Plaintiff has submitted short biographies detailing the experience, qualifications, and billing rates of Polisi, Gordon, and Lynett. *See* Polisi Decl.; Gordon Decl.; Lynett Decl. None of these declarations, however, offer any information about the difficulty of this case or the hourly rates approved in similar cases. *See id.* Based on this information, the Court finds a slight reduction of Lemon's requested hourly rates to be appropriate.

An application of the "forum rule" and a review of cases decided in the neighboring Eastern and Southern Districts of New York reveals no bright line between a reasonable Eastern District rate, and an equally reasonable Southern District rate. Indeed, judges in this District have observed that these two Districts "form a unitary market for legal services." *Luca v. County of Nassau*, 698 F. Supp. 2d 296, 300-01 (E.D.N.Y. 2010); *see also United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents*, 856 F. Supp. 2d 484, 492 (E.D.N.Y. 2012). Given the geographic proximity and overall quality of the bar, the substantial overlap between what courts consider to be the hourly "market rate" in the Southern and Eastern Districts of New York is unsurprising. In *Lilly v. City of New York*, No. 16-cv-322, 2017 WL 3493249, at *1 (S.D.N.Y. Aug. 15, 2017), a District Judge in the Southern District of New York noted that "[p]recedent in the Southern District of New York

11

demonstrates that a reasonable hourly rate for a civil rights attorney can range from $250 to $650." *Id.* at *4 (citing *Abdell v. City of New York*, No. 05-cv-8453, 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015)). Similar fees within this range have recently been awarded in a variety of cases litigated in this District. *See e.g., Schwartz v. United States Drug Enforcement Administration*, No. 13-cv-5004, 2019 WL 1299192, at *9 (E.D.N.Y. Mar. 1, 2019) (awarding $500 hourly fee to partner litigating FOIA litigation and listing awards of between $500 and $655 per hour for partners handling complex litigation), *adopted by*, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019); *National Envtl. Safety Co., Inc. v. Katz*, No. 18-cv-2161, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (award based upon $500-$600 hourly rate to partners and $300 hourly rate for associates litigating breach of contract case); *Quintanilla v. Good Eats Meal Plan Corp.*, No. 18-cv-4350, 2019 WL 1936731, at *2 (E.D.N.Y. May 1, 2019) (noting that courts generally award hourly rates ranging from $300-$400 for experienced attorneys litigating wage disputes); *Reiter v. Maxi-Aids, Inc.*, No. 14-cv-3712, 2019 WL 1641306, at *4 (E.D.N.Y. Apr. 16, 2019) (noting propriety of awarding up to $450 per hour for partners and up to $325 for associates in fee shifting cases).

Moreover, courts within this Circuit have awarded higher "presumptively reasonable fees" where, as here, "the fee is being awarded as a sanction for misconduct" and the movant's counsel is "simply being compensated for costs it should not have had to bear." *Figueroa v. W.M. Barr & Co., Inc.*, No. 18-cv-1187, 2020 WL 2319129, at *3 (S.D.N.Y. May 11, 2020); *see also Klipsch Group, Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 633-34 (2d Cir. 2018) (upholding trial court's imposition

of more than $2.5 million in discovery sanctions in a case with only $20,000 in controversy, recognizing that "courts routinely award [discovery] sanctions without any discussion of the ultimate merits recovery."). With the hourly rates awarded in other cases in mind, the Court adjusts the hourly rates for Lemon's attorneys as follows:

| Name | Title | Hourly Rate Requested | Adjusted Hourly Rate |
|---|---|---|---|
| Polisi | Partner | $750.00-775.00 | $600.00 |
| Gordon | Partner | $550.00-575.00 | $575.00 |
| Lynett | Associate | $450.00-475.00 | $350.00 |

B. **Reasonableness of Hours Expended**

Next, the Court considers whether the hours expended by counsel are reasonable. The Court relies on its experience with this case, and its "experience with the practice of law, to assess the reasonableness of the hours spent[.]" *See Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund*, 270 F. Supp. 3d at 619 (internal quotation marks and citations omitted). In conducting its analysis, the Court may "adjust those portions of an invoice that reflect excessive, redundant or otherwise unnecessary hours." *See Bank of Am. v. Viders*, No. 10-cv-0025, 2011 WL 4527419, at *3 (E.D.N.Y. Jul. 26, 2011), *report and recommendation adopted sub nom. Bank of Am., Nat. Ass'n v. Viders*, 2011 WL 4440357 (E.D.N.Y. Sept. 23, 2011) (internal quotation marks and citation omitted); *see also Montefiore Med. Ctr.*, 2019 WL 4565099, at *5 ("Any hours that were not reasonably expended should be excluded.") (internal quotation marks and citation omitted). A party seeking an award of attorneys' fees must document "the hours reasonably spent by counsel, and

13

thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *E. Sav. Bank, FSB v. Beach*, No. 13-cv-0341, 2014 WL 923151, at *14 (E.D.N.Y. Mar. 10, 2014) (internal quotation marks and citation omitted).

Lemon's attorneys' time records, which are annexed to Polisi's declaration, note the dates on which each attorney worked and descriptions of the work performed. *See* Polisi Decl., Exhibit ("Ex.") B. Defendant seeks reimbursement for 191.2 hours' worth of work, comprised of: (i) 29.0 hours of work performed by Polisi; (ii) 25.8 hours of work performed by Gordon; and (iii) 136.4 hours of work performed by Lynett. *See* Polisi Decl., Ex. A. Lemon's request includes time spent: (i) litigating discovery disputes that arose once Hice's deletion of evidence was revealed by third-party witnesses beginning in December 2020; (ii) preparing for Plaintiff's and Gounelas's supplemental depositions, wherein they were questioned almost exclusively about the deleted materials; (iii) drafting and editing Lemon's motion for sanctions, related exhibits, and reply brief; (iv) drafting and editing Defendant's response to Plaintiff's objections to the Sanctions Opinion; and (v) drafting and editing Defendant's Motion. *See* Polisi Decl. at 2.

Initially, Hice argues that Defendant's Motion should be denied in part, and urges the Court to "award instead a reasonable amount of attorneys' fees comprised of documented time expended to draft and present the underlying spoliation motion" and Defendant's Motion. Pl. Opp. at 3. Plaintiff's Opposition, which contains only a single case citation and explicitly concedes that Defendant's Motion is "conceptually

14

reasonable," is two-pronged, arguing that: (i) the fee amounts and purported hours expended by Lemon's attorneys are excessive; and (ii) Defendant should not be permitted to recoup fees expended related to documents "voluntarily produced" by Plaintiff. *See* Pl. Opp. at 1-3. The Court addresses the first prong of this argument in this Memorandum and Order, and rejects the second prong as disingenuous, because Plaintiff only produced such materials as a result of this Court's intervention.

Conversely, however, the Court concludes that Defense counsel's decision to staff – and seek to recoup hours billed for – two partners and one associate on this relatively straightforward common law assault and battery matter, to be redundant and appropriate for a reduced award. *See Lopez v. 1923 Sneaker, Inc.*, No. 18-cv-3828, 2021 WL 1845057, at *12 (E.D.N.Y. Mar. 5, 2021), *report and recommendation adopted*, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); *see also Datiz v. Int'l Recovery Assocs., Inc.,* No. 15-cv-3549, 2020 WL 5899881 at *12 (E.D.N.Y. March 12, 2020) ("The redundant internal consultations, overstaffing, and duplicative work reflected in the billing records warrant a sizeable reduction of the hours billed in this action."); *Dickey v. Allied Interstate, Inc.*, No. 12-cv-9359, 2013 WL 4399212, at *2 (S.D.N.Y. Aug. 1, 2013) (reducing total hours by 20% for excessive redundant internal consultations as well as overstaffing by multiple attorneys or overly qualified attorneys).

While the use of multiple attorneys is not *per se* unreasonable, *see Held & Hines LLP v. Hussain*, No. 16-cv-05273, 2019 WL 5722128, at *6 (S.D.N.Y. Aug. 7, 2019), *report and recommendation adopted as mod.*, 2019 WL 4727465 (S.D.N.Y.

Sept. 27, 2019), courts should consider "the number of attorneys assigned to staff particular matters or events" in awarding attorneys' fees. *See Centro de la Comunidad Hispana de Locust Valley*, 2019 WL 2870721, at *7. Here, a review of defense counsel's billing records reveals multiple instances where Polisi and Gordon both: (i) attended the same conferences before this Court; and (ii) reviewed the same work product produced by Lynett. *See* Polisi Decl., Ex. B. While the Court recognizes Armstrong Teasdale's need to ensure Lynett's adequate supervision – an associate whose hours purportedly expended in this matter are appropriate given the expected division of labor – the Court will not penalize Hice for Armstrong Teasdale's decision to employ redundant levels of supervision. *See Houston v. Cotter*, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017).

For these reasons, and because the Court is unable – and unwilling – to parse the abovementioned entries in order to determine whether, and if so, how much of Gordon's time was duplicative of Polisi's time, the Court deducts 50% of the hours purportedly expended by Gordon in this matter. *See Feuer v. Cornerstone Hotels Corp.*, No. 14-cv-5388, 2021 WL 4894181, at *4 (E.D.N.Y. Oct. 20, 2021) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations omitted)) (A court "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."). Accordingly, the Court calculates: (i) Polisi's attorneys' fees based on 29.0 hours expended; (ii) Gordon's fees based on 12.9 hours expended, and (iii) Lynett's fees based on 136.4 hours expended.

Multiplying the hourly rates set forth above by the adjusted hours expended by each attorney, the Court calculates the presumptively reasonable fee for each attorney as follows:

| Name | Hourly Rate | Adjusted Hours Expended | Presumptively Reasonable Fee |
|---|---|---|---|
| Polisi | $600.00 | 29.0 | $17,400.00 |
| Gordon | $575.00 | 12.9 | $7,417.50 |
| Lynett | $350.00 | 136.4 | $47,740.00 |

Based on these calculations, the Court awards Plaintiff $72,557.50 in attorneys' fees for services billed at hourly rates.

### C. <u>Deposition Costs</u>

Lemon further seeks $4,561.83 in deposition costs, comprised of: (i) $1,489.03 in costs associated with Gounelas's second deposition; and (ii) $3,072.80 in costs associated with Plaintiff's supplemental deposition. *See* Polisi Decl., Exs. A & B. In this Circuit, reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Notwithstanding, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. Jul. 21, 2011)). A party is not entitled to recover costs for which it provides inadequate substantiation. *See Douyon v. N.Y. Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) (finding that without underlying documentation of itemized expenses, the Court has "no way of confirming" that costs were incurred by

17

counsel); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-cv-3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to an absence of documentation).

Here, Lemon submits invoices from Armstrong Teasdale for the costs associated with ordering transcripts of Gounelas's second deposition ($1,489.03 incurred on February 5, 2021) and Hice's supplemental deposition ($3,072.80 incurred on September 27, 2021), respectively. *See* Polisi Decl., Ex. B. Moreover, Plaintiff does not explicitly challenge the validity of these costs. *See generally* Pl. Opp. Accordingly, the Court awards Defendant $4,561.83 in deposition costs.

### III. CONCLUSION

For the reasons set forth above, the Court awards Lemon $77,119.33 in attorneys' fees and costs. The Clerk of the Court is respectfully directed to enter a partial judgment in this matter.

Dated:   Central Islip, New York
         March 23, 2022

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge
